## THOMAS LEE *vs.* CITY OF BOSTON.

The *St.* of 1852, *c.* 301, which provides that "any person who shall have his residence in the city of Boston on the first day of January shall, on the first day of May following, be taxed in that city, notwithstanding he may have removed therefrom before the first day of May," applies to those only whose domicil is in Boston on the first day of January; and not to a person who habitually resides, for seven months of the year, in his own house in another town, where he has for twenty years been taxed for his poll and personal property, and voted and exercised the rights of citizenship, although he spends five months of each year, including the winter months, in a house owned by him in Boston. But *it seems*, that this statute applies to those who, between the first day of January and the first day of May, remove their domicil from Boston to another part of the State; and that, so applied, it is within the constitutional power of the legislature.

ACTION OF CONTRACT to recover back the amount of a tax assessed by the defendants upon the personal property and poll of the plaintiff for the year 1853, and paid by him under protest The parties submitted the case to the decision of the court upon the following statement of facts, with an agreement that the court might draw such inferences from these facts as might be drawn by a jury.

"For twenty years or more before this tax was assessed upon the plaintiff, he was the owner of a house in Boston, and of an estate and house at Brookline in the county of Norfolk; and during that period spent about seven months of each year, namely, from about the middle of April until about the middle of November, at Brookline, and the remainder of the year at Boston; he had been always taxed in Brookline for his personal property and poll, and had voted and exercised the rights of citizenship in that town. His house in Boston was always

Lee *v.* City of Boston.

closed during that part of the year which he spent at Brookline, and his house in Brookline during that part of the year which he spent in Boston; but his gardener's house and his greenhouse at Brookline were open during the whole year, and he visited the estate once or twice in each week, whilst he was staying in Boston. The plaintiff moved into Boston, as usual, about the middle of November 1852, with the intention of returning to Brookline, as usual, in the following spring. He was living in Boston on the first day of January 1853 with his family, and continued so to live till about the twentieth day of April in said year, when he removed to Brookline with his family. The plaintiff was taxed for his personal property and poll for the year 1853 in Brookline, as well as in Boston; and has continued to exercise municipal rights as a citizen and voter in Brookline; and has paid the tax assessed upon him in that town."

*J. Lowell*, for the plaintiff. This case involves the construction and validity of the *St.* of 1852, *c.* 301, which is as follows:

" An act to change the time of assessing taxes in the city of Boston.

" Any person, who shall have his residence in the city of Boston on the first day of January, shall, on the first day of May following, be taxed in that city, notwithstanding he may have removed therefrom before the first day of May; and no person so taxed shall be liable to assessment for his personal property in any other city or town on the first of May in the same year."

1. On the facts agreed, it is clear, and will probably be conceded, that the plaintiff's domicil was in Brookline on the 1st of January 1853. That was the place of his principal occupation, affections and abode, and where he had for at least twenty years exercised the rights, and been subject to the duties of a citizen. See cases cited below; and *Attorney General* v. *Napier*, **6** Exch. 217; *Granby* v. *Amherst*, **7** Mass. 1; *Lyman* v. *Fiske*, **17** Pick. 231; *Thorndike* v. *Boston*, 1 Met. 242; *Sears* v. *Boston*, 1 Met. 250; *Cabot* v. *Boston*, 12 Cush. 52.

2. Therefore he had his residence in Brookline to all legal intents and purposes. In Brookline, he was to sue and be sued, Rev. Sts. *c.* 90, §§ 14, 15, 19, 20; *c.* 109, § 7; to serve on the

41 *

jury, Rev. Sts. c. 95; to vote, and to be counted in apportion-
ing of senators and representatives, Const. of Mass. c. 1, § 2, arts.
1, 2; § 3, arts. 2, 4.

3. His residence was also at Brookline for the purpose of
being assessed for taxes; for "residence," in this statute, is equiv-
alent to domicil. (1.) Words in a statute, as in other written
instruments, are to be construed according to their received and
appropriate meaning in the law. Bac. Ab. Statute, I. Rev.
Sts. c. 2, § 6, cl. 1. United States v. Curtis, 4 Mason, 236.
Merchants' Bank v. Cook, 4 Pick. 411. Prescott v. Elm, 7
Cush. 348. In the law, especially of Massachusetts, the words
"reside," "residence". and "resident," have the meaning here
contended for. The State v. Ross, 3 Zab. 517. Lambe v. Smythe,
15 M. & W. 433. Roosevelt v. Kellogg, 20 Johns. 208. Const. of
Mass. c. 1, § 2, art. 2. Greene v. Greene, 11 Pick. 410. Put-
nam v. Jackson, 10 Mass. 488. Lincoln v. Hapgood, 11 Mass.
350. Jennison v. Hapgood, 10 Pick. 77. Abington v. North
Bridgewater, 28 Pick. 176. Harteau v. Harteau, 14 Pick. 181.
Ames v. Winsor, 19 Pick. 247. Opinion of Justices, 5 Met. 587.
St. 1838, c. 163, § 1.

(2.) Statutes are to be construed with especial reference to
the acts in pari materia. Bac. Ab. Statute, I. 1 Kent Com. (6th
ed.) 463. Ailesbury v. Pattison, 1 Doug. 30. By a comparison
of the provisions of c. 7 of the Rev. Sts. with subsequent stat-
utes on the subject of taxation, and an examination of the cases
cited under the first point, it appears that the words "reside,"
"resident," &c. are synonymous with "inhabit," "inhabitant,"
&c.; and that, for the purposes of taxation, every one resides or
has his residence in, or is an inhabitant of, that town or place
where he has his legal domicil; and the fact of actual tarrying
at the time of assessment is entirely immaterial. See especially
St. 1850, c. 276, in which the words "residence," "inhabitant"
and "domicil" are used indiscriminately.

(3.) The title of the act and its language show that its object
was to "change the time" of assessing taxes in Boston, not the
principle of assessment; and that the mischief to be remedied
was "a removal." But a removal before the first of May had no

ill effect on Boston, unless it amounted to a change of domicil; for the time of removal was not material, but its nature. The act means therefore a change of legal residence. And see Rev. Sts. c. 90, § 10; *Claflin* v. *Beach,* 4 Met. 392; *McDaniel* v. *King,* 5 Cush. 473. The intention of the legislature doubtless was to prevent fraudulent removals; and such is the effect of this statute; for every person, who habitually spends a part of the year in Boston, will probably be there on the 1st of January, and it is for him to show that Boston is not his domicil.

(4.) There is nothing in the act which shows an intention to depart from the usual legal meaning of the words employed It does not define what stay, tarry or sojourn, short of the acqui· sition of a domicil, shall amount to a residence. On the con- struction contended for by the defendants, it applies as much to members of the legislature, judges, jurors, citizens, aliens and all others who for any definite purpose of business or pleasure, may happen to live temporarily in Boston on New Year's Day, as to the plaintiff. *The State* v. *Ross,* 3 Zab. 517. *Judd* v. *Lawrence,* 1 Cush. 531.

4. If the act have the construction contended for by the defendants, it is unequal and unconstitutional. It is unjust to the individuals reached by it; because it puts upon them a burden not borne by the other citizens of the commonwealth. It is unjust to other cities and towns; because it deprives them of their fair share of the taxes, although, by the decennial valuation of 1851, they pay state taxes on the property of the inhabitants. Const. of Mass. *c.* 1, § 1, art. 4. Suppt. to Rev. Sts. 785. It changes the connection between taxation and suffrage; for every one is still to vote in the city or town of his domicil, which is the place appointed by the constitution. All those who pay taxes in Boston, but vote elsewhere, are in effect taxed without their own consent; and as their only equivalent, have a voice in the distribution of funds to which they in no way contribute. It is unjust and arbitrary; because it leaves the assessment of the temporary residents of Boston optional with the assessors of Boston, and exempts from taxation elsewhere only those persons actually taxed in Boston. If it intends to make

the poll tax assessable in Boston under such circumstances as this case presents, it allows a double taxation; for it exempts the persons assessed in Boston from taxation only for their personal property; and the poll is not personal property. Rev. Sts. *c.* 7, §§ 6, 9.

*G. S. Hillard,* (City Solicitor,) for the defendants. The payment of taxes and voting in Brookline in 1853 were voluntary acts of the plaintiff, which cannot affect the rights of the city of Boston.

1. "Residence" as used in *St.* 1852, *c.* 301, is not synonymous with domicil, but must be taken in its more restricted sense of commorancy for a time certain. From an examination of the constitution and laws of Massachusetts, it will appear that such words as "inhabitant," "resident," "place of abode," "residence," &c. are not uniformly used with precision; but that their meaning must be sought from their connection and context, the subjects to which they are applied, and the apparent intent of the legislature. Const. of Mass. *c.* 1, § 1, art. 4; § 2, arts. 1, 2, 5; § 3, art. 2; *c.* 2, § 1, art. 2; § 2, art. 1. Rev. Sts. *c.* 7, § 10; *c.* 45, § 1; *c.* 64, § 3; *c.* 76, §§ 9–11; *c.* 83, § 5; *c.* 90 § 10; *c.* 109, § 7; *Sts.* 1837, *c.* 236; 1838, *c.* 163, §§ 1, 19; 1844, *c.* 178, § 9; 1850, *c.* 276; 1852, *c.* 287. "Inhabitancy" and "residence" are not convertible and identical terms; nor have they been so held when the discrimination becomes important. The first is the generic, the other the specific term. *Putnam* v. *Johnson,* 10 Mass. 488. *Harvard College* v. *Gore,* 5 Pick. 377. *Lyman* v. *Fiske,* 17 Pick. 234. *McDaniel* v. *King,* 5 Cush. 473. *In re Thompson,* 1 Wend. 43. *The Queen* v. *Stapleton,* 1 El. & Bl. 766. *The King* v. *Mashiter,* 6 Ad. & El. 153. *The King* v. *Adlard,* 4 B. & C. 772. *Maltass* v. *Maltass,* 1 Rob. Eccl. 75. In the construction of statutes, the court will always endeavor to give effect to the intent of the legislature, and every clause and word of a statute will be presumed to have been intended to have some force and effect. *Opinions of the Justices,* 7 Mass. 523, and 22 Pick. 573. *Kilby Bank, petitioner,* 23 Pick. 93. *Commonwealth* v. *Kimball,* 24 Pick. 370. Dwarris on Sts. (2d ed.) 693, 694, 700, 718. To discover the true meaning of a statute,

courts will consider other statutes relating to the same subject matter. *Church* v. *Crocker,* 3 Mass. 17. *Holbrook* v. *Holbrook,* 1 Pick. 258. The use of the word "residence" in the *St.* of 1852, when the word "inhabitant" had been used in Rev. Sts. *c.* 7, must have been intentional; and effect must be given to that intent by giving to "residence" its more restricted meaning.

2. The plaintiff had two domicils, in the course of the year, for purposes of taxation. It is well settled that a man may have two domicils for some purposes. *Somerville* v. *Somerville,* 5 Ves. 750. *Greene* v. *Greene,* 11 Pick. 410. Phillim. Domicil, 15, 16. In this case are all the elements, which go to make up the definition of domicil, both in Boston and in Brookline. If he had died in Boston in January 1853, the probate court for the county of Suffolk might have assumed the settlement of his estate. *Harvard College* v. *Gore,* 5 Pick. 373.

The payment of a poll tax in Brookline cannot affect the rights of the city of Boston. Only one poll tax can be assessed in one year, on one person, not exceeding one dollar and fifty cents. Rev. Sts. *c.* 7, § 27. *Preston* v. *Boston,* 12 Pick. 7. *Richards* v. *Dagget,* 4 Mass. 539. Although the *St.* of 1852 is silent as to poll tax, it is to be presumed that the legislature intended that the liability for tax upon personal property should draw with it that for poll tax.

3. If this statute be unconstitutional, it must be because not within the power given to the legislature by the constitution (*c.* 1, § 1, art. 4,) "to impose and levy proportional and reasonable assessments, rates and taxes, upon all the inhabitants of, and persons resident, and estates lying within the Commonwealth." By the express words of this article, the plaintiff may be taxed in Boston, whether he be an inhabitant, or only a resident; it is not contended that the plaintiff's tax is not "proportional;" the only question therefore is whether it is "reasonable." The right of laying taxes is part of the sovereign power, which is delegated in this commonwealth to the several cities and towns; and from this, and from so much being left to the discretion of assessors, results an inequality in the rate of taxation, of which this statute is not the cause. At present, the

rate of taxation is higher in Boston than in Brookline; but it may not always be so. The law, by which the year's taxation is fixed by the inhabitancy on the first day of May is a purely arbitrary rule. Where there are two places of residence, strict equity would require a division of the tax. There is nothing unreasonable in requiring the plaintiff to contribute to the expenses which Boston incurs, in part for his protection and comfort. See *Norwich* v. *County Commissioners*, 13' Pick. 60; *Portland Bank* v. *Apthorp*, 12 Mass. 252; *Goddard, petitioner*, 16 Pick. 504.

MERRICK, J. The general provision of law, respecting the manner in which taxes are to be assessed, requires that all personal estate, except in certain enumerated cases, shall be assessed to the owner in the town where he shall be an inhabitant on the first day of May in each year. Rev. Sts. *c.* 7, § 9. But by the statute of 1852, *c.* 301, any person who shall have his residence in the city of Boston on the first day of January, shall on the first day of May following be taxed in that city, notwithstanding he may have removed therefrom in the intermediate period.

The words " inhabitant," and " resident," " inhabitancy," and " residence," are commonly, though not invariably used, in the constitution and laws of this commonwealth, as synonymous There are a few passages in them where " residents " has a somewhat broader significance than " inhabitants," and designates a class of persons who have no domicil within the State. Thus, where the constitution confers authority upon the general court to impose and levy assessments, rates and taxes upon all " the inhabitants of, and persons resident and estates lying within the Commonwealth," it is apparent that the phrase " persons resident " includes individuals who have no permanent home here, and are not strictly inhabitants of the State. But all such instances, wherever they are found, are exceptions. In general, these words have only one and the same signification; and it is only in those cases, where there is something in the context, or in their connection with other expressions, or in their peculiar use, indicating an intention to give them a larger or different

meaning, that the words " persons resident" are not precisely equivalent to the word " inhabitants." This identity of mean-ing may be observed in many passages of our written law. Thus the constitution declares that no person shall be eligible to the office of governor, who, at the time of his election, has not been an " inhabitant" of the Commonwealth for seven years next preceding; and that the lieutenant governor shall be quali-fied in point of " residence" in the same manner with the gov-ernor. *c.* 2, § 1, art. 2; § 2, art. 1. So, in the general statute concerning taxes and the manner in which they shall be assessed, it is first enacted that all personal property shall be assessed to the owner " in the town where he shall be an inhabitant on the first day of May;" and in the next succeeding section, that per-sonal property held in trust shall be assessed to the person entitled to the income of it " in the town of which he is an in-habitant;" but if he resides out of the State, then to the trustee, " in the town where he resides." Rev. Sts. *c.* 7, §§ 9, & 10, *cl.* 5. The act for the relief of insolvent debtors provides that " any debtor residing in this commonwealth" may apply for its benefit " to the judge of probate for the county within which he re-sides;" and it has been judicially determined that this descrip-tion includes those persons only who have a domicil here, and that no debtor, nor his creditors, can avail themselves of the pro-visions of the act, upon proceedings instituted after his removal and change of abode or domicil to another state. *St.* 1838, *c.* 163, § 1. *Claflin* v. *Beach,* 4 Met. 392.

The statute of 1850, *c.* 276, which was " an act concerning the assessment of taxes," designed to supply an existing defi-ciency, and to prevent the fraudulent avoidance of taxation, affords a similar illustration. The phrases " residence in a town" and " inhabitant of a town," used interchangeably, are several times repeated, in a manner somewhat remarkable, but obviously meaning, and intended to mean, exactly the same thing. This act and the phrases contained in it, and the signifi-cation attached to them, deserve attention, in considering what construction shall be given to the language of the statute of 1852, *c.* 301, on which the defendants rely. It was a recent act,

having been in existence only two years before the enactment of the latter, and was concerning the same general subject. If so recently, and in connection with the same subject, both those phrases were used by the legislature as synonymous, it seems impossible to find a satisfactory reason for refusing to allow a similar signification to one of them when introduced into the latest of the two enactments.

Certainly there is nothing in the act itself, evincing the intention of the legislature to give to the words " having a residence in the city of Boston " any peculiar meaning, or a meaning different from that which they have in their common and ordinary use in the statutes and laws of the Commonwealth. On the contrary, upon the construction contended for by the defendants, this statute would produce changes in the matter of taxation, deeply affecting the rights and liabilities of many individuals and municipal corporations, which ought not to be allowed to prevail except in conformity to the clearly expressed and manifest will of the legislature. For, upon that construction, it is difficult to see why all persons, whether engaged in the execution of their own private enterprises, or, like members of the legislature, judges of the courts of law, jurors in the district and circuit courts of the United States, occupied in the discharge of public duties, who should be actually living for these temporary purposes in the city of Boston on the first day of January, would not be liable to taxation there. This would not only impose a peculiar liability or burden on them, but would withdraw from the towns of which they are inhabitants the proper means of supporting their own municipal institutions.

A correct interpretation of the statute, giving to its words their usual and ordinary signification, leads to no such unreasonable and unjust results. Construing the phrase, " any person who shall have his residence in the city of Boston," to mean an inhabitant there, the only effect of the statute is to make all those persons taxable there, who were inhabitants of that city on the first day of January, although they remove therefrom and acquire a domicil in some other part of the State before the first day of May next ensuing. Even thus construed, it gives

some, and perhaps important, advantages to the city of Boston over other towns. But of the fitness and expediency of such an arrangement, the legislature is the proper and exclusive judge.

It appears, from the statement of facts upon which the parties have agreed that this case shall be decided, that the plaintiff, on the first day of January 1853, was living in the city of Boston in a house of which he was the owner. But for at least twenty years previously to that time, he owned another house in Brookline, in the county of Norfolk, where he spent the greater part of each year; and for the whole of that period he had been constantly taxed for his poll and personal property in that town, and had voted and exercised all his rights of citizenship there. He moved into Boston in November 1852, but with an intention to remain there only for a limited period; and in pursuance of that intention, returned in the month of April ensuing to his estate in Brookline. He acted himself, and was treated by others, as an inhabitant of that town. These facts, upon perfectly well settled principles, are conclusive as to the place of his domicil and inhabitancy. *Harvard College* v. *Gore*, 5 Pick. 370. *Sears* v. *Boston*, 1 Met. 250. As he moved into Boston only for a temporary purpose, and for a limited period, and returned to Brookline within a few months, when that purpose was accomplished, his domicil was not changed, and he continued all the time to be an inhabitant of Brookline. He did not therefore, within the meaning of the statute, " have his residence in the city of Boston on the first day of January " 1853; and therefore the assessment of a tax upon his poll and personal property there for that year was without warrant or authority of law; and he has a right to a return of the money which, by means of it, the defendants constrained him to pay.

*Judgment for the plaintiff.*